*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

*DAVID MADISON,*                              )
                                             )
            *Plaintiff*                       )
                                             )
*v.*                                          )            *Docket No. 07-08-P-S*
                                             )
*JOHN E. POTTER, Postmaster General,*         )
*United States Postal Service,*               )
                                             )
            *Defendant*                       )


*RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT*


The defendant, the Postmaster General of the United States Postal Service, moves for summary

judgment on all claims in this action alleging discrimination and retaliation arising out of physical

disability.  I recommend that the court grant the motion in part.

### I.  Summary Judgment Standards

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "In this regard, 'material' means that a

contested fact has the potential to change the outcome of the suit under the governing law if the dispute

over it is resolved favorably to the nonmovant.  By like token, 'genuine' means that 'the evidence

about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving

party.'"  *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor.  *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."  *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District.  *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See*

*id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(e).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

## II.  Factual Background

The plaintiff began working for the United States Postal Service ("USPS") in April 1989 and is still so employed.  Defendant's Statement of Undisputed Facts ("Defendant's SMF") (Docket No. 22) ¶ 1; Plaintiff's Amended Opposing Statement of Material Facts ("Plaintiff's Responsive SMF") (Attachment 1 to Plaintiff's Motion to Amend Opposing and Additional Statements of Material Facts (Docket No. 31)) ¶ 1.  In 1989 he became employed as a clerk in the Portland Processing and

Distribution Center and worked in bid positions[1] on the night shift, or Tour 1, until November 30, 2001.  *Id*. ¶ 2.  At all times prior to July 2006, the plaintiff was assigned to the Portland Processing and Distribution Center.  *Id*. ¶ 3.  In July 2006 all mail processing operations and clerk employees moved to a newly constructed plant in Scarborough, Maine.  *Id*.

Shifts at the USPS are designated Tour 1, Tour 2 and Tour 3.  *Id*. ¶ 4.  An employee is considered to be working Tour 1 if his start time is any time from 8:00 p.m. to 3:59 a.m.  *Id*.  An employee is considered to be working Tour 2 if his start time is any time from 4:00 a.m. to 11:59 a.m.  *Id*.  An employee is considered to be working Tour 3 if his start time is any time from 12:00 p.m. to 7:59 p.m.  *Id*.

The plaintiff worked on Tour 1 until November 30, 2001.  *Id*. ¶ 5.  From about October 31, 1992 until about April 15, 1994 the plaintiff's hours were from 10:15 p.m. to 6:45 a.m.  *Id*. ¶ 6.  From about April 16, 1994 to about March 13, 1995 the plaintiff's hours were from 12:00 a.m. to 8:30 a.m. *Id*. ¶ 7.  From about April 1, 1995 to about November 30, 2001 the plaintiff's hours were from 10:30 p.m. to 7:00 a.m.  *Id*. ¶ 8.  On or about August 15, 2000 the plaintiff injured his back while working. *Id*. ¶ 9.  He has a diagnosis of underlying degenerative joint disease with chronic low back strain. Plaintiff's SMF ¶ 9; Defendant's Responsive SMF ¶ 9.  On or about October 31, 2001 the plaintiff was notified that his bid assignment would be modified due to staffing and scheduling assignments and that his work hours would be from 11:00 p.m. to 7:30 a.m.  Defendant's SMF ¶ 10; Plaintiff's Responsive SMF ¶ 10.  On or about November 9, 2001 the plaintiff was notified that his bid assignment had been abolished and that he would be unassigned.  *Id*. ¶ 11.

---

[1] When a "bid" position is available, the employee with the most seniority among those who bid on the job will be awarded the job. Plaintiff's Amended Statement of Additional Material Facts ("Plaintiff's SMF") (included in Plaintiff's Responsive SMF beginning at 13) ¶ 46; Defendant's Reply to Plaintiff's Statement of Additional Material Facts ("Defendant's Responsive SMF") (Docket No. 34) ¶ 46.  When a bid job is eliminated, that employee becomes what is known as an unassigned regular.  *Id*. ¶ 49.

From about December 1, 2001 until about May 12, 2006 the plaintiff held a bid job on Tour 2 as an automation clerk. *Id*. ¶ 12. His work hours were from 11:00 a.m. to 7:30 p.m. *Id*. This job required lifting trays of mail from cages in the floor and then sweeping the mail into a machine. Plaintiff's Plaintiff's SMF ¶ 7; Defendant's Responsive SMF ¶ 7. After examining the plaintiff, Dr. John Pier from the Maine Spine Care Center reported on or about May 9, 2002 that the plaintiff could continue his regular activities and that he expected the plaintiff to be able to do full time, full duty work within one to two months. Defendant's SMF ¶ 13; Plaintiff's Responsive SMF ¶ 13. On or about March 10, 2004 the plaintiff was cleared to perform regular work for 6 hours a day. *Id*. ¶ 14. On or about March 26, 2004 the plaintiff was restricted from doing repetitive bending. *Id.* ¶ 15. On or about April 21, 2004 the plaintiff received a limited duty assignment to work from 11:00 a.m. to 7:30 p.m., four hours a day on the machines and 4 hours a day in the hand case.[2] *Id*. ¶ 16. A limited duty or modified assignment is a temporary assignment created by the USPS to accommodate an injured employee who has medical restrictions. *Id*. ¶ 17. Employees with limited duty assignments still hold their regular bid jobs and are expected to return to them once the need for restrictions no longer exists. *Id*.

On or about November 8, 2004 the plaintiff was released to regular duty with no restrictions. *Id*. ¶ 18. On or about June 13, 2005 the plaintiff reported that he had suffered a recurrence of his back injury. *Id*. ¶ 19. On or about June 24, 2005 the plaintiff received a limited duty assignment to work from 11:00 a.m. to 7:30 p.m. *Id*. ¶ 20.

As of October 2005 Douglas Bailey was the acting lead Manager of Distribution Operations. *Id*. ¶ 21. Before October 2005 Bailey had been working on a new staffing package for the new Scarborough, Maine plant that was to open in or about July 2006. *Id*. ¶ 22. Bailey was responsible

---

[2] The purpose of the hand case is to sort mail that cannot be processed in automation. Plaintiff's SMF ¶ 66; Defendant's Responsive (*continued on next page*)

for reducing staffing by three hundred thousand hours. *Id*. He had to reduce manual operations by forty thousand hours. *Id*. He also had a goal to reduce overtime hours. *Id*.

It is a goal of the USPS to process as much mail as possible using automation machinery. *Id*. ¶ 23. As the mail sorting machines have improved, there has been less need for hand sorting the mail and the USPS has reduced the number of manual sorting jobs. *Id*. ¶ 24. Mail that is processed manually and not by automation is processed in the "hand case." *Id*. ¶ 25. There was more mail to be sorted in the hand case on Tours 3 and 1 than on Tour 2. *Id*. ¶ 26. More employees are assigned to work in the hand case in the evening and night than during the day. *Id*. ¶ 27.

As of October 2005 the plaintiff was unable to do his bid job as a clerk due to his injuries and was assigned to work exclusively in the hand case, manually sorting mail during his Tour 2 work hours. *Id*. ¶ 28. He had never held a bid job in the hand case. *Id*. ¶ 29. He was only working there because of his limited duty assignment due to his back injury. *Id*. As of October 2005 no postal employee held a bid job in the hand case. *Id*. ¶ 31. John McGovern and Chris Caputo held the job of automation supervisor on Tour 2 when the plaintiff was working in the hand case on Tour 2. *Id*. ¶ 32. As of October 2005 no supervisor was specifically assigned to the hand case on Tour 2. *Id*. ¶ 33. McGovern and Caputo had to supervise both the automation areas and the hand case. *Id*. A supervisor was specifically assigned to the hand case for Tours 1 and 3. *Id*. ¶ 34. As of October 2005 a lot of overtime was occurring on Tours 1 and 3 for work in the hand case. *Id*. ¶ 38.

On or about October 22 or 23, 2005 McGovern informed the plaintiff that his duty hours would be changed to a start time of 7:30 p.m. *Id*. ¶ 40. McGovern explained to the plaintiff that he was being moved because he could not work on the machines, the USPS wanted the manual work done at night and there was no supervisor for the hand case on Tour 2. *Id*. ¶ 41. He told the plaintiff that he

---

SMF ¶ 66.

was not needed on the day shift unless he could perform work on the machines. Plaintiff's SMF ¶ 19; Defendant's Responsive SMF ¶ 19. McGovern told the plaintiff that as soon as he could work his bid job for even two hours, he could come back to days. *Id*. ¶ 21. It was Bailey's decision to reassign the plaintiff off of Tour 2. Defendant's SMF ¶ 42; Plaintiff's Responsive SMF ¶ 42. Bailey wanted to move the plaintiff off of Tour 2 because there was inadequate supervision in the hand case on Tour 2, the plaintiff was not doing productive work for the USPS on Tour 2 and Bailey could reduce overtime by having the plaintiff work on either Tour 1 or Tour 3. *Id*. ¶ 43.[3] On or about October 26, 2005 the plaintiff initiated the EEO process, complaining that he was being discriminated against because of his disability by being moved to a 7:30 start time and that he was passed over for overtime hours because of his disability. *Id*. ¶ 44. The plaintiff had not initiated any EEO activity before this. *Id*. ¶ 45. At some point thereafter Bailey was informed that he was within his rights to change the plaintiff's hours. *Id*. ¶ 47.

On or about April 29, 2006 McGovern informed the plaintiff that his duty hours would be changed to a start time of 9:30 p.m. pursuant to an Offer of Modified Assignment. *Id*. ¶ 48. The difference between the April 2006 Modified Assignment and the October 2005 Modified Assignment was that the work hours were from 9:30 p.m. until 6:00 a.m. instead of 7:30 p.m. to 4:00 a.m. *Id*. ¶ 49. As of April 29, 2006 the plaintiff could not work his Tour 2 automation bid job. *Id*. ¶ 51.

On or about May 1, 2006 the plaintiff contacted the Agency EEO office in connection with a claim of discrimination in his USPS employment. *Id*. ¶ 55. From about May 13, 2006 until about October 13, 2006 the plaintiff's work hours were from 9:30 p.m. to 6:00 a.m. *Id*. ¶ 56. On May 26,

---

[3] The plaintiff purports to deny paragraph 43 of the defendant's statement of material facts, but the denial does not and cannot provide evidence of Bailey's thoughts and motive. Plaintiff's Responsive SMF ¶ 43. To the extent that the paragraph is supported by the citations given by the defendant, it is therefore deemed admitted. The plaintiff is not foreclosed hereby from arguing from other undisputed evidence in the proper forum that he has identified an unresolved factual dispute, as he does in his purported response to this paragraph.

2006 the plaintiff filed a union grievance. *Id*. ¶ 57. Even though the plaintiff was working on Tour 1 on a limited duty assignment he still owned his Tour 2 job and could return to it if he was able to perform its duties. *Id*. ¶ 59. His physical restrictions are permanent and it is unlikely that he would ever be able to work on the machines again. Plaintiff's SMF ¶ 16; Defendant's Responsive SMF ¶ 16. On or about June 15, 2006 the plaintiff was notified that his grievance had been denied. Defendant's SMF ¶ 62; Plaintiff's Responsive SMF ¶ 62.

The plaintiff was in a group of Tour 2 employees who were going to lose their Tour 2 bid jobs with the move to the Scarborough plant. *Id*. ¶ 61. As a result of discussions with the clerks' union, clerks were offered custodial positions because clerk jobs were going to be eliminated with the move to the new plant. *Id*. ¶ 63. By letter dated June 30, 2006 the USPS informed the plaintiff and approximately 56 other Tour 2 employees that his Tour 2 bid position would be abolished in the near future. *Id*. ¶ 64. By letter dated September 13, 2006 the plaintiff was informed that his Tour 2 bid position was abolished. *Id*. At that time the plaintiff was reassigned to Tour 1 along with approximately 27 other Tour 2 employees. *Id*. The plaintiff was offered the option of switching to the custodial craft. *Id*. ¶ 65. On or about June 19, 2006 the plaintiff agreed to be transferred to the custodial craft. *Id*. ¶ 66.[4] The USPS modified the physical requirements of the custodial position so that the plaintiff could work within his restrictions. Plaintiff's SMF ¶ 18; Defendant's Responsive SMF ¶ 18.

In July 2006 the USPS moved into the new plant in Scarborough. Defendant's SMF ¶ 67; Plaintiff's Responsive SMF ¶ 67. On October 14, 2006 the plaintiff began working as a custodian on Tour 2 with hours of 6:30 a.m. to 3:00 p.m., where he remains at present. *Id*. ¶ 69. The plaintiff's

---

[4] The plaintiff denies this paragraph of the defendant's statement of material facts, but it is apparent that his denial is of the use of the verb "volunteered." Plaintiff's Responsive SMF ¶ 66. I have substituted "agreed," which is consistent with the tenor of his "denial."

current position requires him to mop floors, clean toilets, sweep parking lots, mow lawns, clean tables, dust, vacuum, empty 13-gallon trash bins and water buckets. *Id.* ¶ 70-71.

The plaintiff's back injury has affected his ability to sleep and his sexual activity. *Id.* ¶ 73. He had to stop doing a lot of yard work and change how he did his mowing and lawn work. *Id.* The injury affects his ability to lift and bend at work. *Id.* ¶ 75. Shoveling and moving equipment sometimes cause back flare-ups. *Id.* When the plaintiff's back pain increases, it makes his anxiety worse, as his psychiatric and medical problems are closely tied in with each other. Plaintiff's SMF ¶ 43; Defendant's Responsive SMF ¶ 43. The plaintiff preferred the day shift because he could sleep better, his health was better and he could be home with his girlfriend. Defendant's SMF ¶ 76; Plaintiff's Responsive SMF ¶ 76. The sleep and health-related problems the plaintiffs describes having while working on the night shift would not have been better with a 7:30 p.m. start time versus a 9:30 p.m. start time. *Id.* ¶ 78.

As of May 13, 2005 the plaintiff's Tour 2 schedule was 11:00 a.m. to 7:30 p.m. *Id.* ¶ 79. His hourly wage rate was $22.28 and his gross basic salary was $46,340. *Id.* Additionally, he was entitled to a night differential rate between 6:00 p.m. and 7:30 p.m. of $1.63 per hour. *Id.* As of October 1, 2005, the plaintiff's Tour 2 schedule was 11:00 a.m. to 7:30 p.m. *Id.* ¶ 80. His hourly wage rate was $22.63 and his gross basic salary was $47,068. *Id.* Additionally, he was entitled to a night differential rate between 6:00 p.m. and 7:30 p.m. of $1.63 per hour. *Id.*

As of April 29, 2006 the plaintiff's Tour 2 schedule was 11:00 a.m. to 7:30 p.m. *Id.* ¶ 81. His hourly wage rate was $23.21 and his gross basic salary was $48,283. *Id.* As of May 13, 2006 the plaintiff's Tour 1 schedule was 9:30 p.m. to 6:00 a.m. *Id.* ¶ 82. His hourly wage rate was $23.21 and his gross basic salary was $48,283. *Id.* Additionally, he was entitled to a night differential rate throughout these hours of $1.63 per hour. *Id.* As of October 14, 2006 the plaintiff's Tour 2 schedule

was 6:30 a.m. to 3:00 p.m. *Id*. ¶ 83. His hourly rate was $22.16 and his gross basic salary was

$46,086. *Id*. He did not receive a night differential rate. *Id*.

On January 4, 2007 Dr. Carrier noted after examining the plaintiff:

> Patient doing well. He is no longer taking Mobic and is functioning at the same level taking infrequent Tylenol ES. He needs to continue the same permanent restrictions. I do feel that the patient could do a better job and would have fewer symptoms if he were more motivated. He needs to do a more regular exercise program to include stretching, and walking for exercise.

*Id*. ¶ 84.

### III.  Discussion

The complaint alleges discrimination based on disability in violation of the federal

Rehabilitation Act of 1973, 29 U.S.C. § 794, and retaliation for protected activity in violation of 42

U.S.C. § 2000e-3(a). Complaint, etc. (Docket No. 1) ¶¶ 10-39.

### A.  Rehabilitation Act Claim (Count I)

The Rehabilitation Act provides, in relevant part: "No otherwise qualified individual with a

disability . . . shall, solely by reason of her or his disability, be . . . subjected to discrimination under

any program or activity . . . conducted by . . . the United States Postal Service." 29 U.S.C. § 794(a).

"In any claim under the Rehabilitation Act, the plaintiff must first establish that []he has a disability

covered by the Act." *Tardie v. Rehabilitation Hosp. of Rhode Island*, 168 F.3d 538, 542 (1st Cir.

1999). In order to establish a *prima facie* case of disability discrimination under the Rehabilitation

Act, a plaintiff must prove as well that he nevertheless was able to perform the essential functions of

his job, with or without reasonable accommodation, and that the employer took adverse action against

him because of his disability. *Wright v. CompUSA, Inc.*, 352 F.3d 472, 475 (1st Cir. 2003).[5] The

---

[5] *Wright* involved a claim under the Americans with Disabilities Act ("ADA"), 352 F.3d at 475, but the same legal standard is applicable to claims under the Rehabilitation Act, *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 23 n.2 (1st Cir. 2001).

defendant first argues that the plaintiff is not disabled for purposes of a Rehabilitation Act claim. Defendant's Motion for Summary Judgment, etc. ("Motion") (Docket No. 21) at 4-8.

Under the Act, an "individual with a disability" is one who has a physical or mental impairment that substantially limits one or more of that individual's major life activities, has a record of such impairment or is regarded as having such an impairment.  29 U.S.C. § 705(20)(B).  The defendant contends that the plaintiff's back impairment did not have the quality of permanence required by the definition and did not cause him enough difficulty to be considered substantially limiting at the relevant time.[6]  Motion at 7.  The plaintiff responds that he is substantially limited in the major life activities of sleeping, lifting and working.  Opposition at 1.

The phrases "substantially limits" and "major life activities" must be strictly interpreted to create a demanding standard for qualifying as disabled.  *Rolland v. Potter*, 492 F.3d 45, 47 (1st Cir. 2007) (citing *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002)).  To qualify as a disabled person under the Rehabilitation Act, a plaintiff must have a permanent or long-term impairment that prevents or severely restricts him from doing activities that are of central importance to most people's daily lives.  *Id*. at 47-48.  This court has recognized sleeping, lifting and working as major life activities, while noting that the Supreme Court in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999), said that working is to be considered a major life activity only when the plaintiff is not substantially limited with respect to any other major life activity, *Harding v. Cianbro Corp*., 436 F.Supp.2d 153, 172-73 (D. Me. 2006).

---

[6] The parties refer to the plaintiff's impairments in the present tense throughout their written submissions, but the gravamen of the plaintiff's complaint is his assignment to work on Tour 1 from May 13, 2006 until October 13, 2006.  Complaint ¶¶ 20-23, 33; Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opposition") (Docket No. 24) at 7-20; Defendant's SMF ¶ 56, Plaintiff's Responsive SMF ¶ 56.  Since October 14, 2006 the plaintiff has been working on Tour 2.  Defendant's SMF ¶ 69; Plaintiff's Responsive SMF ¶ 69.  It is only the plaintiff's physical status during the five-month period when he was assigned to Tour 1 that appears to be relevant.

The inability to lift heavy objects, without more, does not amount to a substantial limitation on lifting. *Id*. at 176. On this issue, the plaintiff relies on his "current restrictions" of "no lifting more than 20 pounds, which can only be done for 21 minutes an hour." Opposition at 6. The use of the word "current" in this context is misleading, because the record evidence cited by the plaintiff in support of this restriction is actually dated September 27, 2006, within the relevant period. Plaintiff's Responsive SMF ¶ 72 & Exh. 11 thereto. That report of Paul Carrier, M.D., to the Workers' Compensation Board sets the lifting restriction cited by the plaintiff and states that the restriction is permanent. *Id*. As Judge Woodcock of this court noted in *Harding*, "a number of circuit courts have held that a lifting restriction of twenty-five pounds does not render a person disabled within the meaning of the ADA." 436 F.Supp.2d at 176. In that case, Judge Woodcock held that a lifting restriction of ten pounds for no more than twenty-one minutes per hour created an issue of material fact on the question whether the plaintiff was substantially limited in the major life activity of lifting. *Id.* at 177. The First Circuit held subsequently in *Rolland* that a lifting limitation of twenty pounds, combined with other physical limitations, was not sufficient to permit the plaintiff in that case to survive summary judgment on the question whether the plaintiff had a disability or impairment for purposes of the Rehabilitation Act. 492 F.3d at 49. Accordingly, I conclude that the plaintiff has not carried his burden to demonstrate the existence of a disputed issue of fact on this question; he may not rely on an assertion that he is substantially limited in the major life activity of lifting.

With respect to the major life activity of sleeping, the plaintiff asserts that his "sleeping is affected by his back injury and by his psychological issues, which Dr. Price has diagnosed as Panic Disorder and Depressive Disorder." Opposition at 2. He states that "from January 1, 2005 forward, [he] has had difficulty sleeping due to his anxiety." *Id*.[7] The defendant responds, correctly, that the

---

[7] My analysis of this issue is made difficult by the plaintiff's failure to cite to the summary judgment record in support of the factual (*continued on next page*)

plaintiff has offered no evidence that the supervisors who made the decision to assign him to Tour 1, Bailey and McGovern, were aware that he suffered from anxiety. Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Reply") (Docket No. 33) at 1. "To prove discrimination [based on disability], an employee must show that the employer knew of such employee's substantial physical or mental limitation." *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 163-64 (5th Cir. 1996) (plaintiff must show that employer knew of both impairment and resulting limitation). The plaintiff here does not identify separately any evidence that his sleeping limitations were caused by his back injury, other than an assertion that "when his back condition flares up," he has difficulty sleeping. Opposition at 2. That factual assertion is supported by paragraph 32 of his statement of material facts, which does refer to the relevant period of time. The defendant objects to this paragraph as "overly broad and vague," but that objection is overruled. The defendant also denies the paragraph, based on the plaintiff's deposition testimony. Defendant's Responsive SMF ¶ 32. However, the plaintiff's assertion is based on his affidavit, which is Exhibit 8 to his statement of material facts, Plaintiff's SMF ¶ 32, and that document supports paragraph 32, Declaration of David J. Madison (Exh. 8 to Plaintiff's Statement of Undisputed Facts (Docket No. 25)) ¶ 4, and is not necessarily contradicted by the deposition testimony cited by the defendant.

The question thus becomes whether the plaintiff has shown a substantial impairment in the major life activity of sleeping as a result of his back injury. The defendant contends that "an episodic sleep disorder is not enough to establish that the Plaintiff was disabled." Reply at 2. The case law cited by the plaintiff, Opposition at 2-3, either deals with continuous sleeping difficulties, *see Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1060 (9th Cir. 2005); *Schopmeyer v. Plainfield Juvenile Correctional Facility*, 2002 WL 31255466 (S.D.Ind. Sept. 17, 2002), at *5; *Bennett v. Unisys Corp.*,

---

assertions made in his memorandum of law. Opposition at 2-3.

2000 WL 33126583 (E.D.Pa. Dec. 11, 2000), at *6; *Presta v. Southeastern Pa. Transp. Auth.*, 1998 WL 310735 (E.D.Pa. June 11, 1998), at *7, or does not specify the nature of the sleeping difficulties, *see Reed v. Lepage Bakeries, Inc.*, 2000 WL 761626 (D. Me. Feb. 29, 2000), at *4.  With one exception, the case law cited by the defendant  actually does not deal with episodic difficulty in sleeping, as the defendant suggests, but rather holds that a plaintiff has not shown a substantial impairment of sleep that is worse than the quality of sleep of the general population when the plaintiff submits evidence that he can only get two to four hours of sleep a night, *Boerst v. General Mills Operations, Inc.*, 25 Fed.Appx. 403, 407 (6th Cir. 2002); or when he submits evidence that he takes a medication as a sleep aid and "usually get[s] a tough night's sleep[,]" *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 644 (2d Cir. 1998); or when she submits only a conclusory affidavit, asserting that her impairment has caused "loss of sleep[,]" *Stein v. Ashcroft*, 284 F.3d 721, 726 (7th Cir. 2002).  The one cited case that does refer to episodic difficulty in sleeping, *Pouliot v. Town of Fairfield*, 226 F.Supp.2d 233, 243 (D. Me. 2002), involved widely separated episodes ("some months" in 1984, 1996, 1998 and 1999) and a lack of specific evidence about any sleep difficulties at the time the alleged discrimination took place.  In the instant case, there is insufficient particular information about the amount of sleep that the plaintiff gets when "his back condition flares up" and how frequently this occurred at the relevant time to enable a reasonable factfinder to conclude that the plaintiff's back condition caused a substantial limitation on sleeping.

With respect to the plaintiff's contention that he was substantially limited in the major life activity of working at the relevant time, he again refers to his "current" work restrictions and the effects of his panic disorder and depressive disorder as well as his high school education and "limited" work history to support his assertion that "there are a very limited number of jobs that [he] can perform."  Opposition at 3-6.  The defendant's rather brief discussion of this issue asserts that the

plaintiff has offered insufficient evidence to support a claim of a substantial limitation on his ability to work because "[h]e is able to do manual[] sorting for the Postal Service and almost all of what is required of him in his custodial job[,]" Dr. Carrier's 20 pound lifting restriction is "recent[]" and does not relate to the relevant period and Dr. Carrier "noticed some improvement in [the plaintiff's] back." Reply at 2-3.  The defendant also relies on the defendant's "own words at his deposition" to the effect that his back injury "[a]ffects his ability to lift and bend at work[,]" "has affected his ability to sleep and his sexual activity[,]" has forced him to "stop doing a lot of yard work[,]" and to stop playing basketball.  *Id*. at 3.  Dr. Carrier's opinion noticing some improvement, Defendant's SMF ¶ 84, is dated January 4, 2007, after the period at issue.  His 20-pound lifting restriction, Plaintiff's Responsive SMF ¶ 72, was imposed on September 27, 2006, which might be "recent," but is certainly within the relevant time period.  The cited deposition testimony and the plaintiff's ability to do certain work for the USPS are not necessarily inconsistent with an inability to perform a wide range of jobs, which is the appropriate test for an alleged substantial limitation on working.  *Guzmán-Rosario v. United Parcel Serv., Inc.*, 397 F.3d 6, 10-11 (1st Cir. 2005).

The plaintiff cites the appropriate test in this regard, Opposition at 6, although his reliance on his mental impairments again suffers from a lack of evidence that any such impairment was known to his supervisors.  The plaintiff's assertion that "Dr. Carrier is also of the opinion that David's restrictions pose a substantial limitation on his ability to perform  manual tasks and his ability to work[,]" Opposition at 4, is not supported by any entry in his statement of material facts and must therefore be disregarded.  Still, I conclude that the plaintiff, given the benefit of inference that is his in connection with a motion for summary judgment, has made a barely sufficient factual showing to entitle him to proceed to trial on the question whether his back injury caused a substantial limitation on his ability to work during the relevant period of time.

15

The defendant's next argument is that the plaintiff suffered no adverse action when his shift was changed.  Motion at 8-10.  An adverse employment action is one that "involves a discrete change in the terms and conditions of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *de Jesús v. Potter*, 211 Fed. Appx. 5, 9 (1st Cir. Dec. 27, 2006) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)) (internal quotation marks omitted). Typically, the employer "must either . . . take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities" or "withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service." *Blackie v. Maine*, 75 F.3d 716, 725 (1st Cir. 1996); *see also Berry v. City of South Portland*, 525 F.Supp.2d 214, 228 (D. Me. 2007). Whether a particular job reassignment is materially adverse depends on the circumstances of the particular case and should be judged from the perspective of a reasonable person in the plaintiff's position. *Billings v. Town of Grafton*, __ F.3d __, 2008 WL 324902 (1st Cir. Feb. 7, 2008), at *13 (quoting *Burlington N. & Santa Fe Ry.*, 548 U.S. 53, __, 126 S.Ct. 2405, 2417 (2006), in the context of a retaliation claim).  A loss of prestige as a result of the transfer can demonstrate that it was materially adverse, if that loss is demonstrated by objective measures like reporting to a lower-ranked supervisor, having less contact with the public and requiring less experience and fewer qualifications. *Billings*, 2008 WL 324902 at *14.  Magistrate Judge Kravchuk of this court has suggested, without deciding, that "adverse work hour changes" may constitute a materially adverse employment action. *Pastula v. Lane Constr. Corp.*, 2006 WL 2925239 (D. Me. Oct. 11, 2006), at *12.  The case law cited by the parties on this point provides little guidance.[8]

---

[8] The two possible exceptions are *Khan v. Cook County*, 1996 WL 432410 (N.D.Ill. July 30, 1996), cited by the plaintiff, (*continued on next page*)

The plaintiff says that the transfer to Tour 1 was adverse because any USPS employee has to work shifts other than the day shift for a number of years before he or she can obtain day-time working hours; every employee who is not on Tour 2 will bid for a job on Tour 2 when it opens; the plaintiff had been able to obtain a job on Tour 2; the USPS Employee Labor Relations Manual established that the plaintiff was not supposed to be moved off Tour 2 even for a limited duty job "except under very limited circumstances[;]" he should have been moved to Tour 3 "which was closer in time to his bid hours[;]" and, when his bid job was eliminated, he was working Tour 1 hours, which meant that he became an unassigned regular on Tour 1 "with little to no chance in getting back on Tour 2." Opposition at 8-9.[9] The paragraphs of the plaintiff's statement of material facts on which these assertions appear to be based are numbers 6, 45-47, 49, 86-88. I found no paragraphs in the plaintiff's statement of material facts that support the assertions that every employee who is not on Tour 2 will bid for a job on Tour 2 when it opens; the plaintiff should have been moved to Tour 3; and the plaintiff has little to no chance of getting back on Tour 2. The facts asserted in the plaintiff's statement of material facts are that Tour 2 is generally preferred by most employees, Plaintiff's SMF ¶ 47; Defendant's Responsive SMF 47; that when an employee has partially overcome an injury or disability, if adequate work is not available at the facility within the employee's regular hours of duty, work outside the employee's regular schedule may be assigned as limited duty but all reasonable

---

Opposition at 7, and *Thomas v. Potter*, 202 Fed.Appx. 118 (7th Cir. 2006), cited by the defendant, Motion at 8-9. In *Khan*, the court observed that "[t]ransfer to the night shift can be more than a minor change in working conditions." 1996 WL 432410 at *2. In *Thomas*, the Seventh Circuit held in a brief unpublished opinion that a change in work schedule did not constitute an adverse employment action in the absence of evidence that the employer in making the change "knew about and sought to exploit" the plaintiff's "unique vulnerability," specifically that the plaintiff would consider the change undesirable or inconvenient. 202 Fed.Appx. at 119. I do not find this gloss on the definition of an adverse employment action to be appropriate but note that, if it were, there is evidence in the summary judgment record that the defendant in this case was or should have been aware that the plaintiff considered the change from Tour 2 to Tour 1 to be undesirable.

[9] Again, the plaintiff's failure to include citations to his statement of material facts in this list of factual assertions makes the court's job considerably more difficult. The plaintiff also contends that moving him from Tour 2 to Tour 1 "sent a message to USPS employees – a message of punishment[;]" treated him "less favorably than employees with junior seniority[;]" and that "[t]his message was obvious and powerful." Opposition at 8-9. The defendant's objections to the paragraphs in the plaintiff's statement of material facts that (*continued on next page*)

efforts must be made to keep the hours of limited duty as close as possible to the employee's regular schedule, *id*. ¶ 86; I see nothing to support the third assertion in the plaintiff's statement of material facts. With these modifications, given the facts that the plaintiff was working on Tour 2 when he injured his back and that most employees prefer Tour 2, I conclude that, while it is again a close question, the plaintiff has submitted evidence that would allow a reasonable factfinder to conclude that his transfer to Tour 1 was an adverse employment action, even though it resulted in higher pay.

The defendant next contends that there is no evidence that the plaintiff was treated differently from nondisabled employees, which is another way to state the final element of the Rehabilitation Act test – that the employer took the adverse employment action because of his disability. *Jacques*, 96 F.3d at 511. He asserts that the plaintiff had only one coworker who worked the same assignment on Tour 2 and that both were assigned to Tour 1 at the same time "because of the needs of the [USPS]." Motion at 10. The plaintiff responds that "[b]ecause Defendant segregated disabled individuals, there simply are no non-disabled employees in the hand case to which to compare them." Opposition at 9-10. Perhaps recognizing that this assertion does not serve to meet his evidentiary obligation, the plaintiff goes on to argue that he should be compared to "the non-disabled workers who also have bid jobs on Tour 2[,]" who he contends "cannot be moved off Tour 2 without clearly violating the collective bargaining agreement." *Id*. at 10. This argument is similarly unhelpful to the plaintiff because it simply presents an interpretation of the collective bargaining agreement in effect at the USPS. It does not demonstrate that the defendant in fact treated similarly situated employees differently. He asserts in conclusory fashion that "[m]oving [him] off Tour 2 when he had a bid job on that Tour treated him in a manner different from other employees who held bid jobs on Tour 2[,]" *id*., but he offers no evidence that any non-disabled employee was not moved to Tour 1 when that

_____

support these assertions, Defendant's Responsive SMF ¶¶ 93-95, are well taken and those paragraphs are stricken.

employee's circumstances were otherwise equal to those of the plaintiff at the relevant time.  A possible violation of the collective bargaining agreement does not and cannot serve to prove that the defendant moved the plaintiff to Tour 1 due to his disability.  Admittedly, the plaintiff has attempted to show that there was work available within his craft on Tour 2 that he could have done at the time he was moved to Tour 1, factual assertions that are disputed by the defendant, Plaintiff's SMF ¶¶ 57-59, 68, 70-79, Defendant's Responsive SMF ¶¶ 57-59, 68, 70-79, but those assertions, even interpreted as expansively as they must be in the plaintiff's favor, do not establish that nondisabled individuals doing the same or similar work on Tour 2 were not transferred to Tour 1, or would not have been, when the circumstances were otherwise the same.[10]  Therefore, the defendant is entitled to summary judgment on Count I.  *See Dudley v. Augusta Sch. Dep't*, 23 F.Supp.2d 85, 94 (D. Me. 1998).

This lack of evidence on the final element of the plaintiff's *prima facie* case makes it unnecessary to consider the defendant's further contentions that the USPS had a legitimate non-discriminatory reason or reasons for changing the plaintiff's shift and that there is no evidence that the reasons were a pretext for discrimination based on disability.  Motion at 11-13.

### B.  Retaliation (Count II)

The plaintiff does not contend that he has offered direct evidence of actionable retaliation for his filing of a discrimination complaint ("EEO complaint") with the USPS on October 16, 2005.  The elements that he must therefore establish to demonstrate the existence of a *prima facie* case are the following: (i) he engaged in conduct that is protected under Title VII of the  Civil Rights Act, 42 U.S.C. § 2000e-3(a); (ii) he suffered an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action.  *Fennell v. First Step Designs, Ltd.*, 83

---

[10] The defendant states that "[t]he only support Plaintiff presents for his assertion that there are other similarly situated employees that were treated differently is Doug Bailey's EEO Affidavit, Plaintiff's Exh. 9."  Reply at 5.  This document is not cited in the plaintiff's memorandum, Opposition at 9-11.  This is an apparent reference to paragraph 106 of the plaintiff's statement of material facts.  I read (*continued on next page*)

F.3d 526, 535 (1st Cir. 1996).  Once the *prima facie* showing has been made, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment decision, and, if the employer does so, the plaintiff must show that the proffered reason is in fact a pretext and that the employment action was the result of the defendant's retaliatory animus.  *Id.*

In this case, the defendant apparently admits that the filing of an EEO complaint with the USPS was protected conduct.  He proceeds directly to the second element of the *prima facie* case, arguing that the reassignment of the plaintiff to Tour 1 in late April 2006 was not a materially adverse employment action because it could not have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  Motion at 13-14 (quoting *Burlington Northern*, 126 S.Ct. at 2409).  Essentially, both parties rest on their arguments with respect to the existence of an adverse employment action in connection with Count I of the complaint.  Motion at 14; Opposition at 16-17.  For the reasons already stated, I cannot rule out the possibility that a reasonable factfinder could conclude that the change in shift was an adverse employment action under the circumstances of this case.

The defendant next contends that the shift change was not causally related to the filing of the EEO complaint, because the defendant "sought to change Plaintiff's shift **before** he had engaged in any EEO activity."  Motion at 15 (emphasis in original).  He correctly states that an employer need not suspend a planned transfer simply because the employee to be transferred files a complaint upon being notified of the transfer.  *Id*.; *see Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001). This argument rests on paragraphs 40 and 46-49 of the defendant's statement of material facts, the most critical of which for purposes of this contention is paragraph 46, which reads as follows:

> Ms. Balko's and Mr. Madison's hours were not changed in October 2005 because Mr. Bailey told Union officials he would hold off until he had

---

that paragraph to be directed to the plaintiff's retaliation claim and accordingly do not consider it here.

further conversations with the union and with injury compensation personnel to make sure that he was within his rights to change their hours.

Defendant's SMF ¶ 46.  The plaintiff denies this paragraph, asserting:

Ms. Balko and Mr. Madison's hours were not changed in 10/05 because Mr. Riley was involved and Mr. Bailey did not want the hassle of dealing with a complaint.

Plaintiff's Responsive SMF ¶ 46.  From these differing presentations, the defendant argues that he had made the decision before the plaintiff filed the EEO complaint in October 2005 and the plaintiff argues that he made a new decision to change the plaintiff's shift in April 2006.  The two versions of paragraph 46 are not necessarily contradictory, of course, but the inference which the plaintiff draws - - "Mr. Bailey backed down and canceled the move[,]" Opposition at 17 - is not unreasonable.

The plaintiff's position is bolstered somewhat by the fact that the starting time for the new position was to be 7:30 p.m. when Bailey informed the plaintiff of the change in October 2005 and 9:30 p.m. when the change was actually made in April 2006.  Defendant's SMF ¶¶ 40, 48; Plaintiff's Responsive SMF ¶¶ 40, 48.  The plaintiff's position is weakened by the fact that seven months passed between the filing of the complaint and the change in shift.  *See, e.g., Mesnick v. General Elec. Co.*, 950 F.2d 816, 828 (1st Cir. 1991).  However, that expanse of time could also raise questions about the defendant's contention that Bailey was merely "consulting" with union and workers' compensation personnel to make sure that the planned change was within his prerogative.[11]  The defendant is not

---

[11] The plaintiff offers as further evidence of a connection between his October 2005 complaint and the April 2006 change in shift that "it appears that retaliating against Mr. Madison for taking EEO action had happened in the past.  According to Defendant's records, David Madison first contacted the EEO office on 10/26/05 regarding his concern that he was being improperly denied overtime.  Three days later he was notified that he was being moved off Tour 2.  The temporal proximity cannot be denied."  Opposition at 18.  This assertion is apparently based on paragraph 107 of the plaintiff's statement of material facts, which in turn is based on paragraph 6 of the plaintiff's affidavit.  Plaintiff's SMF ¶ 107.  However, that assertion is contradicted by the plaintiff's admission that he was informed on October 22, 2005 that his duty hours would be changed to a start time of 7:30 p.m. and that he initiated the EEO process, including a claim that he was improperly passed over for overtime hours, on October 26, 2005, Defendant's SMF ¶¶ 40, 44; Plaintiff's Responsive SMF ¶¶ 40, 44, exactly the opposite temporal relationship of that presented in the quoted statement in his memorandum of law.  Under the circumstances, I credit the admission to factual assertions that are fully supported by the documents to which they refer.  *See Scott v. Harris*, 127 S.Ct. 1769, 1775-76 (2007).  In addition, even if events had occurred in the latter sequence, the fact (*continued on next page*)

entitled to summary judgment on the basis of his argument that the plaintiff cannot establish a *prima facie* case of retaliation.

The defendant next contends that he is entitled to summary judgment because he has shown that the USPS had a legitimate, non-discriminatory reason for changing the plaintiff's shift: Bailey wanted to reassign the plaintiff to the later start time because "there was inadequate supervision in the hand case on Tour 2 and [Balko and the plaintiff] were not doing productive work for the Postal Service on Tour 2." Motion at 11. The plaintiff challenges, Opposition at 11-15, the factual assertions offered by the defendant in support of this argument, Motion at 11-12. The defendant points out that no postal employee held a bid job in the hand case on Tour 2, the limited-duty job the plaintiff was working before he was assigned to Tour 1; the USPS seeks to process as much mail as possible using automated machinery; the largest volume of mail arrived at the Portland processing plant after 7 p.m. and needed to be processed and dispatched by 6:30 a.m.; there was more mail in the hand case to be sorted on Tours 1 and 3 at the relevant time than there was during Tour 2; a lot of overtime was being used on Tours 1 and 3 for work in the hand case at the relevant time; mail that could have gone through the machines on Tour 2 was instead being brought to the hand case;[12] and Bailey was responsible for reducing staffing by three hundred thousand hours, including forty thousand hours from manual operations and a reduction of overtime. Motion at 11-12.

The plaintiff responds, without further disputing the defendant's factual assertions just listed, by asserting that, while no supervisor was assigned responsibility for the hand case on Tour 2, unlike Tours 1 and 3, there was a supervisor "assigned to the floor on which [the plaintiff] worked" who

---

remains that no change in hours actually occurred until April 2006.

[12] The plaintiff purports to deny the paragraph of the defendant's statement of material facts that supports this factual assertion. Defendant's SMF ¶ 39; Plaintiff's Responsive SMF ¶ 39. However, the critical aspects of the denial are phrased in the present tense, and some of the record documents cited deal only with the present time, while the relevant time is the time in April 2006 when the plaintiff was transferred to Tour 1. None of the authority cited by the plaintiff concerns the manner in which the mail got to the hand
(*continued on next page*)

could walk down to the hand case to check on the work being done; if the supervisor had the time to assign "make-work" to the hand case he had time to supervise the plaintiff; there are more employees in the hand case on Tours 1 and 3 than there are during Tour 2; there frequently is no hand case supervisor at work on Tour 3; other employees often worked in the hand case on Tour 2; after the plaintiff was moved to Tour 1 he was sorting the same mail he would have sorted on Tour 2; and certain mail goes from the machines to the hand case at all times of day. Opposition at 12-15. The argument that a supervisor who had time to assign "make-work" to the hand case must therefore have had time to supervise the plaintiff as he spent a full day working there assumes facts not in evidence – primarily that the two functions would take the same amount of time each day – and I will therefore not consider it further. The assertion that there frequently is no hand case supervisor at work on Tour 3 is based on paragraph 57 of the plaintiff's statement of material facts, to which the defendant has made the valid objection that, lacking a time frame, the assertion is irrelevant. Defendant's Responsive SMF ¶ 57. I will disregard that assertion as well. The remaining factual assertions are not necessarily inconsistent with the reasons given by the defendant for moving the defendant to Tour 1. Still, viewing these assertions as the court must in connection with a motion for summary judgment, it would not necessarily be unreasonable for a juror to conclude that the defendant's proffered reasons are pretextual. That conclusion does not end the matter, however. The reasons given by the employer must be shown to be a pretext *and* the plaintiff must show that the challenged job action was in fact the result of discriminatory animus. *Fennell*, 83 F.3d at 535.

Here, the defendant mentions this final element of the legal standard but does not address it, choosing apparently to rely on his argument that the expressed "legitimate non-retaliatory reasons, all related to enhancing productivity and efficiency[,]" as sufficient. Motion at 17-18. Again, while the

---

case at the relevant time, whether some of it could have been sorted by machine or whether it would have been more efficient to have (*continued on next page*)

evidence is certainly not strong on this point, the plaintiff has offered enough evidence to allow a reasonable factfinder to conclude that the real motive for the shift change was retaliation for the filing of a complaint based on disability rather than the non-discriminatory reasons put forward by the defendant.

## IV.  Conclusion

For the foregoing reasons, I recommend that the defendant's motion for summary judgment be **GRANTED** as to Count I (discrimination) and **DENIED** as to Count II (retaliation).

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 25th day of February, 2008.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

that mail sorted on a tour other than Tour 2.

24